**Charles L. DOBY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–1655.

District of Columbia Court of Appeals.

Argued Nov. 10, 1988.
Decided Dec. 7, 1988.

1. D.C.Code § 22–504 (1981).

James G. McGuire, appointed by this court, for appellant.

W. Mark Nebeker, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell and Sharon M. Collins, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and MACK and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was charged with assault[1] and possession of a prohibited weapon (PPW).[2] A jury found him guilty of PPW but acquitted him of assault. He contends on appeal that the trial court erred in refusing to give a jury instruction on defense of property. We disagree and affirm.

One morning in June 1984, appellant, Glenn Good, James Barnes, and Anthony Tatum gathered to play cards in an open area between a car wash and a garage, where appellant was employed. The card game was a daily event, and these four men had played together many times in the past. On this occasion they agreed to ante up fifty cents for each hand of cards that was dealt.

A few minutes after the game began, appellant left to do some work for his employer. When he returned to the game, only $1.50 was on the table. Appellant accused Good of not putting his fifty cents into the ante, and Good countered by accusing appellant of not anteing up. When Good grabbed fifty cents off the table, appellant walked away saying, "Wait until I come back," and entered the garage.

Less than a minute later, appellant came out of the garage with a blue towel in his right hand. He walked up to Good, slapped his face twice, and then pulled a gun from under the towel and pointed it at Good's head. Good saw bullets in the gun, so he ran. As Good was about to turn a corner leading into an alley, appellant fired the gun. Good testified that he "clearly" saw a bullet hit the wall of a building, but

2. D.C.Code § 22–3214(b) (1981).

appellant later testified that the gun was a starter pistol that fired only blanks. Neither the gun nor a spent bullet was ever recovered.

After all the evidence was in, defense counsel asked the court to give the following jury instruction, which is an abbreviated version of Criminal Jury Instructions for the District of Columbia, No. 5.21 (3d ed. 1978):

> If a person reasonably believes that he has been illegally dispossessed of real or personal property by another, he may revert to reasonable, non-deadly force to repossess the property if he acts immediately after the dispossession has occurred, or in hot pursuit of the person who has dispossessed the property.

The court refused to give the instruction.

A defendant in a criminal case is entitled to a jury instruction on any issue fairly raised by the evidence, no matter how weak that evidence may be, but an instruction need not be given when there is no factual or legal basis for it. *Carter v. United States*, 531 A.2d 956, 959 (D.C. 1987) (citing cases); *see Gray v. United States*, 549 A.2d 347, 349 (D.C.1988). This court has held that self-defense is a permissible defense to a charge of PPW because it can negate the defendant's intent to use a prohibited weapon unlawfully. *See Potter v. United States*, 534 A.2d 943, 946 (D.C.1987); *McBride v. United States*, 441 A.2d 644, 648–650 (D.C.1982). However, we have never gone so far as to rule that a claim of defense of property is likewise available as a defense to a PPW charge.[3] We need not do so here because, even if the defense were available, the facts would not warrant the giving of the requested instruction. Appellant's evidence at trial showed that he was using the pistol not to repossess the fifty cents, but merely to vindicate a principle.

James Barnes, a defense witness, testified that when the quarrel flared up over the missing fifty cents, he stepped between appellant and Good in an effort to calm things down. Barnes said, "It isn't worth fighting over fifty cents," and offered to give either man fifty cents if they would both drop the matter. Appellant refused, however, insisting that it was a matter of "principle."[4] It was at this point that appellant walked into the garage, got the pistol, and came back out. He walked over to where Good was standing, pointed the gun at him, and eventually fired it. Later, during appellant's testimony, when the prosecutor asked why he had rejected Barnes' offer, appellant replied, "Because I had my money up there, why couldn't he [Good] get his money up?" On this evidence the court ruled that, as a matter of law, appellant's use of the weapon could not be considered a defense of property. We agree. Moreover, there was no evidence that appellant pursued Good to retrieve his supposedly missing fifty cents; the testimony was, to the contrary, that appellant stood still and fired his gun at the fleeing Good. We therefore hold that there was no factual basis on which the trial court could have given the instruction requested by defense counsel. *See Taylor v. United States*, 380 A.2d 989, 994 (D.C. 1977); *Rhodes v. United States*, 354 A.2d 863, 864 (D.C.1976); *see also Cooke v. United States*, 213 A.2d 508, 510 (D.C. 1965).

*Affirmed.*

---

**3.** The comment to instruction No. 5.21 begins by stating, "This is a new instruction."

**4.** Good refused on the same ground to accept Barnes' offer.