**Willis E. JOHNSON, Appellant,**

v.

**Venisha A. JOHNSON, Appellee.**

**No. 13185.**

District of Columbia Court of Appeals.

Argued Nov. 16, 1978.

Decided April 25, 1979.

Rehearing Denied May 25, 1979.

William C. Gardner, Washington, D. C., for appellant.

Catherine Cronin, Washington, D. C., for appellee.

Before KELLY, NEBEKER and MACK, Associate Judges.

KELLY, Associate Judge:

A decree of absolute divorce, signed October 29, 1970, ended the marriage of Venisha and Willis Johnson. That decree incorporated by reference a voluntary separation agreement between the parties of July 13, 1970, which contained the following provisions pertinent to this appeal:

EIGHTH: The husband makes the following provisions for the support and maintenance of the wife and minor child, in lieu of all other and prior written or oral agreements and other obligations of the husband to the wife thereon:

(a) Husband shall during his lifetime, pay to the wife the sum of $400.00 per month, each month for support of herself and their minor child subject to the following conditions:

(1) When the minor child of the parties, Lisa, obtains her majority, marries, becomes emancipated, or deceases, whichever shall occur first, then the amount above stated shall be reduced to $200.00 per month.

(2) The remaining $200.00 shall cease when the wife deceases or remarries but, if she remarries during Lisa's minority it shall not cease until Lisa reaches her majority or is otherwise emancipated.

\* \* \* \* \* \*

FOURTEENTH: Each party expressly consents to the provisions of this agreement being incorporated into the aforesaid contemplated divorce or in any other divorce proceedings or any other proceedings between the parties wheresoever or whatsoever.

On September 26, 1977, the wife moved the court to adjudge the husband in contempt for failure to make the required child support payments and to modify the alimony provisions of the decree so that she would receive $400 rather than $200 per month.[1] A hearing on these motions was held, during which the court ruled that the separation agreement had been merged into the divorce decree. Thereafter, during a recess in the proceedings, counsel and the parties met and devised a comprehensive compromise settlement. In open court, the husband's attorney advised the court that all parties were willing to consent to a dismissal of the contempt motion, a withdrawal of any claim for child support arrearages, and a modification of the husband's alimony obligation to $400 a month per the wife's original motion.

After ascertaining the genuineness of the wife's consent to this compromise, the trial court examined the husband as follows:

THE COURT: Under the circumstances, recognizing that each person does a little bit back and forth, Mr. Johnson, compromising in situations like this, do you believe that this matter is as fair as you felt you were able to resolve?

\* \* \* \* \* \*

MR. JOHNSON: Your Honor, it is not fair. I'll just say that. It is not fair.

THE COURT: Even though it is not fair as far as you look at it, Mr. Johnson, are you going to be accepting this in the spirit of compromise?

MR. JOHNSON: I'm not accepting it in the spirit of compromise, Your Honor. I'm going to obey the Court order. I'm going to obey the Court order, as I have done.

THE COURT: Mr. Johnson, you recognize, sir, I did [not] pick this figure of additional two hundred dollars a month. I had nothing to do with it. That was worked out between the various parties, through their counsel. You do understand that, is that right, sir?

MR. JOHNSON: I understand that, Your Honor. I understand, you know, very, very clearly. I am a little bit reluctant to speak for, perhaps, you know, jeopardizing any rights that I might have

---

1. It was alleged that the husband had, in January 1977, unilaterally reduced the support payments to $200 per month, presumably because the child, then 19 years of age, was employed.

or in someway or other being penalized by the Court expressing my true feelings.

\* \* \* \* \* \*

MR. JOHNSON: . . . I'm here before you today and I might make a decision that might put me in jeopardy before another judge ten years from now. These are the things that disturb me. I don't understand the legal ramification of what is—what is emanating from the bench, Your Honor.

THE COURT: Sir, you have a lawyer.

MR. JOHNSON: Yes, I have a lawyer. He—a very competent lawyer and he has explained all of the legal ramifications to me, Your Honor. As best as I can understand it, his advice to me is to accept the compromise.

THE COURT: What do you want to do, Mr. Johnson? You, of course, don't have to accept his advice or you can accept his advice. . . .

[A pause in the proceedings.]

MR. JOHNSON: Your Honor, I accept the compromise with deep, deep and profound, and that's redundant, I know, reservations.

THE COURT: But you do accept it, is that right?

MR. JOHNSON: Yes, ma'am; it is totally unfair.

\* \* \* \* \* \*

THE COURT: May I ask how much education you had?

MR. JOHNSON: I have gone beyond college, ma'am.

Being convinced that the husband's consent was genuine, albeit reluctantly given, the trial court approved the agreement. Although the trial judge signed the consent order on October 3, 1977,[2] and the order was filed in the clerk's office on October 4, 1977, it was not entered by the clerk until December 23, 1977.[3] In the interim, on November 16, 1977, the husband moved to withhold entry of the consent order. The motion was heard on December 20, 1977, and denied on January 12, 1978.[4] The husband appeals, arguing that it was error to modify the divorce decree because (1) his consent to the compromise was not effectively given or, in the alternative, was effectively withdrawn before entry of judgment; (2) the payments to the wife under the separation agreement were not "alimony" and thus were not modifiable; and (3) the wife was bound contractually by the terms of the settlement agreement and thus could not seek modification.

The husband argues that to the extent that the judgment to which he consented was not entered on the docket at the time he moved to withhold the order, the court was powerless to enter the subsequent judgment. *See Van Donselaar v. Van Donselaar,* 249 Iowa 504, 87 N.W.2d 311 (1958); *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288 (1951). We disagree.

It appears from the record that the husband's consent to the compromise was voluntarily if reluctantly given on September 26, 1977. The trial judge conducted an extensive inquiry and determined that the consent was genuine, and whether or not we would have come to the same conclusion, we cannot now hold that the court's conclusion was erroneous as a matter of law. We must decide, however, whether the husband's motion to withhold entry of the order was effective to withdraw his consent from the judgment.[5]

In *Conrad v. Medina,* D.C.Mun.App., 47 A.2d 562 (1946), this court's predecessor stated that, "A duly rendered judgment is binding and enforceable between the parties, even though through neglect it has not been entered." *Id.* at 564; *accord Krasner*

2. The order was signed by wife and her attorney, but it was not signed by either husband or his attorney.

3. A pattern of such inexcusable laxity in making docket entries is apparent from many records on appeal. We urge that the trial court give immediate attention to this problem.

4. This order was not entered on the docket until January 23, 1978.

5. There is no reporter's transcript of the hearing on this motion in the record on appeal.

*v. Verner Auto Supply, Inc.*, 130 Ga.App. 892, 894, 204 S.E.2d 770, 772 (1974); *Jones v. Galbasini,* 134 Colo. 64, 67, 299 P.2d 503, 506 (1956) (en banc); *In re Young's Estate,* 414 Ill. 525, 529, 112 N.E.2d 113, 117 (1953). The underlying analysis of that holding was that the entry of judgment by the clerk is a ministerial act and should not be determinative, beyond its obvious evidentiary value, of the rights of the parties involved. *Id.* To the extent that *Conrad* was decided before the adoption, in this jurisdiction, of Fed.R.Civ.P. 58, however, it is not controlling here.

■ Super.Ct.Civ.R. 58, which is identical to Fed.R.Civ.P. 58, states in part:

Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a). . .

Rule 79(a) contains the procedures for entry of judgment by the clerk. In *Conrad v. Medina, supra,* the appellant argued that there was no binding judgment as there had been no entry under Fed.R.Civ.P. 58, by the clerk. The court there discussed the advantages of applying Rule 58, but noted that it could not do so absent the adoption of the federal rule. Since that rule has now been adopted in this jurisdiction, we apply it here to hold that the judgment was not final until entry by the clerk. *Cf. United States v. Robinson,* D.C.App., 388 A.2d 469, 471 (1978) (criminal case, validating signed but unentered order); *United States v. Hunt,* 513 F.2d 129 (10th Cir. 1975) (applying Wash.R.Civ.P. 58(b) a modification of Fed.R.Civ.P. 58, allowing finality to an unsigned but entered judgment).

■ Although we hold that the consent judgment was not final until entry, we nevertheless conclude that the trial judge did not abuse her discretion in refusing to withhold entry of judgment. To the extent that a consent decree is merely a contract agreed to in open court, *e. g., Pierce v. MacNeal Memorial Hospital Ass'n,* 46 Ill. App.3d 42, 4 Ill.Dec. 615, 360 N.E.2d 551 (1977); *Bland v. Bland,* 21 N.C.App. 192, 203 S.E.2d 639 (1974); *In re Will of Pender-*

*grass,* 251 N.C. 737, 112 S.E.2d 562 (1960); the contract can be avoided on the basis of mistake, fraud or duress, or upon the consent of the parties. *Bland v. Bland, supra; Van Donselaar v. Van Donselaar, supra; Burnaman v. Heaton, supra.* To allow consent to be withdrawn is within the discretion of the trial court. *Klein v. Klein,* 554 P.2d 472 (Utah 1975); *In re Cartmell's Estate,* 120 Vt. 234, 138 A.2d 592 (1958).

The husband argues that to the extent that judgment had not been entered at the time he withdrew his consent, the judgment can be given no force or effect. Absent a showing of fraud, mistake, or duress, we cannot agree. Rather, we agree with the majority in *Klein v. Klein, supra,* which stated:

[T]he same rules apply to binding parties to a [consent degree] as apply to any other agreement. If there is any justification in law or equity for avoiding or repudiating a stipulation, and he timely does so, he is entitled to be relieved from it, otherwise not.

\*　\*　\*　\*　\*　\*

[T]he issue as to whether plaintiff agreed to and should be bound by the stipulation was one of fact for the trial court to determine; and it was not convinced that the plaintiff did not understand and voluntarily agree to the stipulation. [*Id.* at 476.]

Since husband does not argue that he did not understand or agree to the settlement, we will not reverse the trial judge's determination that the consent order should be entered and binding.

Having thus decided that the consent order represents a valid agreement between husband and wife, we need not reach the questions concerning the power of the court to modify the original divorce decree. The consent order places the parties in a contractual relationship derived independently from the authority of the court.

*Affirmed.*